1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12    ROBERT HICKS, an individual, and on          No. 2:24-cv-00911-DJC-AC
      behalf of others similarly situated and
13    aggrieved,

14                        Plaintiff,              ORDER GRANTING MOTION TO COMPEL
                                                  ARBITRATION
15           v.

16    UTILIQUEST, LLC, a Georgia Limited
      Liability Company; DYCOM
17    INDUSTRIES, INC., a Florida
      corporation; and DOES 1 through 50,
18    inclusive,

19
                          Defendants.
20

21

22           Plaintiff Robert Hicks brings a putative class action complaint against Utiliquest,

23    LLC and Dycom Industries, Inc., along with 50 Doe Defendants (together,

24    "Defendants"), for various violations of California's Labor Code, including meal and

25    rest break claims and overtime and reimbursement claims.  In addition, Plaintiff brings

26    a representative action under California's Private Attorneys General Act ("PAGA"),

27    codified at California Labor Code section 2698, *et seq.*  Defendants move to enforce

28    the arbitration clause and the class or collective action waiver contained in an

                                                1

1   agreement Plaintiff signed as a condition of employment with Defendants.  Plaintiff

2   opposes, arguing that Dycom cannot enforce the agreement as a non-signatory and

3   that, in any event, the agreement is unenforceable because it is unconscionable.  For

4   the reasons set forth below, the Court GRANTS Defendants' Motion to Compel

5   Arbitration (ECF No. 9).

6                                   **BACKGROUND**

7   **I.      Factual Background**

8           Plaintiff is a California citizen and resident who worked for Defendants as a non-

9   exempt employee from July 2022 until on or around September 2023.  (*See* Class

10  Action Compl. (ECF No. 1 at 51–68) ¶ 4 ("Complaint" or "Compl.").)  Plaintiff alleges

11  that Defendants "were the joint employers of" Plaintiff.  (*Id.* ¶ 9.)  Plaintiff alleges that

12  both Utiliquest and Dycom maintain offices and facilities in California and conduct

13  business in the state, even though Utiliquest is a Georgia limited liability company and

14  Dycom is a California limited liability company.  (*See id.* ¶¶ 6–7.)

15  **II.     Procedural Background**

16          Plaintiff filed the Complaint in Sacramento County Superior Court on January

17  24, 2024.  (*See* Compl. at 18.)  Defendants removed the matter to federal court based

18  on jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), on

19  March 22, 2024.  (*See* ECF No. 1.)  Defendants filed the instant Motion on March 29,

20  2024.  (*See* Defs.' Mem. of P. and A. in Supp. of Mot. to Compel Arbitration (ECF No.

21  9-1) ("Motion" or "Mot.").)  Plaintiff filed his Opposition on April 12, 2024.  (*See* Pl.'s

22  Opp'n to Defs.' Mot. (ECF No. 14) ("Opposition" or "Opp'n").)  Defendants filed their

23  Reply on April 22, 2024.  (*See* Defs.' Reply in Supp. of Mot. (ECF No. 15) ("Reply").)

24  Pursuant to Local Rule 230(g), the matter was submitted on the briefs without oral

25  argument.  (ECF No. 22.)

26  ////

27  ////

28  ////

**DISCUSSION**

## III.   Legal Standard

The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C. § 2.  The FAA affords parties the right to obtain an order directing that arbitration proceed in the manner provided for in the agreement.  *Id.* § 4.  To decide on a motion to compel arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–69 (2010)).  However, parties may use general contract defenses to invalidate an agreement to arbitrate.  *See id.* at 339. Thus, a court should order arbitration of a dispute only where satisfied that neither the agreement's formation nor its enforceability or applicability to the dispute is at issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010).  "Where a party contests either or both matters, 'the court' must resolve the disagreement," *Granite Rock Co.*, 561 U.S. at 299, because "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit[,]" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (alteration omitted)).  If a valid arbitration agreement encompassing the dispute exists, arbitration is mandatory.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Under § 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of a valid agreement to arbitrate.  *See*

1   *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  In

2   resolving a motion to compel arbitration, "[t]he summary judgment standard [of

3   Federal Rule of Civil Procedure 56] is appropriate because the district court's order

4   compelling arbitration 'is in effect a summary disposition of the issue of whether or not

5   there had been a meeting of the minds on the agreement to arbitrate.'"  *Hansen v.*

6   *LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v.*

7   *Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).  Under this standard of

8   review, "[t]he party opposing arbitration receives the benefit of any reasonable doubts

9   and the court draws reasonable inferences in that party's favor, and only when no

10   genuine disputes of material fact surround the arbitration agreement's existence and

11   applicability may the court compel arbitration."  *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-

12   cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).  A material fact is

13   genuine if "the evidence is such that a reasonable jury could return a verdict for the

14   nonmoving party."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992)

15   (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Conversely,

16   "[w]here the record taken as a whole could not lead a rational trier of fact to find for

17   the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* (quoting *Matsushita Elec.*

18   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

19   **IV.   Analysis**

20       **A.   DYCOM May Enforce the Arbitration Agreement**

21       Plaintiff initially argues that Dycom cannot enforce the arbitration agreement for

22   two reasons.  (*See* Opp'n at 4–7.)  First, Plaintiff argues that Dycom cannot enforce the

23   arbitration agreement because it is not a signatory to the agreement and its claims are

24   not covered by the agreement.  (*See id.* at 4–5.)  Second, Plaintiff argues that Dycom is

25   not a third-party beneficiary to the arbitration agreement.  (*See id.* at 6–7.)  Because

26   the Court agrees that Dycom is a third-party beneficiary of the arbitration agreement,

27   the Court concludes that Dycom may enforce the agreement and does not address

28   Plaintiff's first argument.

1

### 1.   Legal Standard

State law determines whether a non-signatory to an agreement containing an arbitration clause may compel arbitration.  *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009)).  Under California law, a non-signatory is a third-party beneficiary only to a contract "made expressly for [its] benefit."  *Id.* (quoting Cal. Civ. Code § 1559) (alteration in *Ngo*).  Under California law, "[t]he mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary'"; rather, the parties to the contract must have intended the third party to benefit.  *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) (quoting *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 602 (2007)).  The test is this:

> Examine the express provisions of the contract at issue, as well as the relevant circumstances of the contract's formation, to determine not only (1) whether the third party would benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) whether permitting a third party to bring its own breach of contract action against a contracting party would be consistent with the objectives of the contract and the reasonable expectations of the contracting parties.  The proponent must satisfy all three elements for the third party action to proceed.

*Hernandez v. Meridian Mgmt. Servs., LLC*, 87 Cal. App. 5th 1214, 1222 (2023) (citing *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)).  *Accord Ngo*, 23 F.4th at 946.

### 2.   Analysis

Plaintiff argues that "nothing in the Agreement indicates that it was intended to benefit Dycom."  (Opp'n at 7.)  Plaintiff argues that "if Utiliquest intended for Dycom to benefit from the Agreement, it would have presumably included Dycom, either by name or as 'parent company,' as one of the entities listed in the 'Company' definition."  (*Id.*)  Not so.

As Defendants point out, "[t]he Agreement expressly provides that it 'applies to any claims or disputes . . . that You may have against the Company, and/or *its parents*,

subsidiaries and affiliates . . . Each and all of the individuals and entities in the preceding clause may enforce this Agreement." (Reply at 5 (quoting Decl. of Lori Mullins in Supp. of Mot. Ex. G (ECF No. 9-3 at 23–26), at 1 ("Mullins Decl. Ex. G") (providing a copy of the arbitration agreement Plaintiff electronically signed) (first alteration added; emphasis and omissions added in the Reply).) "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1162 (9th Cir. 2010) (quoting *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009)). "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Spinks*, 171 Cal. App. 4th at 1022 (quoting *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.*, 160 Cal. App. 2d 290, 297 (1958)).

Here, the arbitration agreement explicitly states that the agreement extends to "any claims or disputes that . . . [Plaintiff] may have against [Utiliquest], and/or: its parents, subsidiaries and affiliates . . . ." (Mullins Decl. Ex. G, at 1.) Thus, unlike in other cases, the arbitration agreement clearly contemplates a benefit being conferred to Utiliquest's parents, which would include Dycom, and that Dycom would receive the benefit of being able to enforce the arbitration agreement. *Compare with Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1338 (2023) (holding that the defendant was not a third-party beneficiary because the agreement's "direct benefits are expressly limited to those persons who might rely on it to avoid proceeding in court – the purchaser, the dealer, and the dealer's employees, agents, successors or assigns."); *Ngo*, 23 F.4th at 948 ("Though the language allows for arbitration of certain claims concerning third parties, it still gives only NGO, the dealership, and the assignee the power to compel arbitration."). Thus, here, Dycom demonstrates that it "'is a member of a class of persons for whose benefit [the agreement] was made.'" *Spinks*, 171 Cal. App. 4th at 1023 (quoting *Garratt v. Baker*, 5 Cal. 2d 745, 748 (1936)).

1    Relatedly, because Dycom can show that it is a member of a class for whose

2    benefit the agreement was made, Dycom can also demonstrate that permitting it to

3    bring its own breach of contract action against Plaintiff would be consistent with the

4    objectives of the contract and the reasonable expectations of the contracting parties.

5    *See Hernandez*, 87 Cal. App. 5th at 1222 (citing *Goonewardene*, 6 Cal. 5th at 830).

6    Plaintiff cites to *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541 (2018), but that case

7    undermines Plaintiff's position.  (*See* Opp'n at 7.)  In *Fuentes*, the court held that the

8    defendant could not enforce the arbitration agreement as a third-party beneficiary

9    because the arbitration clause "had its own list of intended third party beneficiaries"

10   and "Riverside was not among them."  *Fuentes*, 26 Cal. App. 5th at 552.  Specifically,

11   the "arbitration clause itself specified the entities to which it applied", limiting the

12   clause to "'any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or

13   any employees, officers, directors, agents, of the aforementioned . . . .'"  *Id.* at 549.

14   Similar language is used here (*compare with* Mullins Decl. Ex. G, at 1), but, unlike in

15   *Fuentes*, Dycom falls within the scope of the arbitration clause's limited clause as a

16   parent of Utiliquest, *see Fuentes*, 26 Cal. App. 5th at 552.  (*See also* Decl. of Sara B.

17   Tosdal in Supp. of Pl.'s Opp'n Ex. C (ECF No. 14-2 at 11–12) (providing a copy of an

18   announcement posted on Dycom's website announcing that Utiliquest has become a

19   "wholly owned subsidiary of Dycom.").)  Therefore, it would be consistent with the

20   terms of the arbitration agreement and thus the reasonable expectations of the

21   contracting parties for a parent of Utiliquest, like Dycom, to enforce the arbitration

22   clause.  *See Hernandez*, 87 Cal. App. 5th at 1222 (citing *Goonewardene*, 6 Cal. 5th at

23   830).

24   As a result, the Court concludes that Utiliquest is a third-party beneficiary of the

25   arbitration agreement between Utiliquest's parent company Dycom and Plaintiff, and

26   that Utiliquest may therefore compel arbitration.  *See Ngo*, 23 F.4th at 946–48.

27   ////

28   ////

7

1

**B.     The Arbitration Agreement Is Not Unconscionable**

2      Plaintiff argues that "[e]ven if the Court finds that the Agreement covers the

3 claims and parties at issue in this case, Defendants' motion fails because the

4 Agreement is clearly unconscionable, both procedurally and substantively, and is

5 therefore unenforceable." (Opp'n at 8.)  The Court disagrees.  As explained below,

6 while there is a minimal amount of procedural unconscionability and somewhat more

7 substantive unconscionability, it is not enough to make the entire arbitration

8 agreement unconscionable and unenforceable.[1]

9      **1.     Legal Standard**

10      Under California law, a court may refuse to enforce a provision of a contract if it

11 determines that the provision was "unconscionable at the time it was made." *Lim v.*

12 *TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting Cal. Civ. Code

13 § 1670.5(a)).  Unconscionability "is concerned not with a simple old-fashioned bad

14 bargain, but with terms that are unreasonably favorable to the more powerful party."

15 *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023) (quoting *Sanchez v.*

16 *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)).  A contract is unconscionable

17 if one of the parties lacked a meaningful choice in deciding whether to agree and the

18 contract contains terms that are unreasonably favorable to the other party.  *OTO,*

19 *L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57

20 Cal. 4th 1109, 1133 (2013) ("*Sonic II*")).  "As that formulation implicitly recognizes, the

21 doctrine of unconscionability has both a procedural and a substantive element, the

22 former focusing on oppression or surprise due to unequal bargaining power, the

23 latter on overly harsh or one-sided results." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th

24 1237, 1243 (2016) (quoting *Sonic II*, 57 Cal. 4th at 1133).  But "[s]ubstantive and

25

26

27

28

---

[1] Defendants argued for the first time in the Reply that the Court must compel arbitration because of a
delegation clause contained within the agreement that Plaintiff did not challenge specifically.  (*See*
Reply at 2–4.)  The Court declines to consider this belated argument.  *See, e.g.*, *Zamani v. Carnes*, 491
F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in
a reply brief."  (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).  *Accord Mitchell v. United
States*, 971 F.3d 1081, 1084 n.4 (9th Cir. 2020).

1  procedural unconscionability 'need not be present in the same degree.'"  *Patrick v.*

2  *Running Warehouse, LLC*, 93 F.4th 468, 479 (9th Cir. 2024) (quoting *Sanchez*, 61 Cal.

3  4th at 910).  "Essentially a sliding scale is invoked . . . [so] the more substantively

4  oppressive the contract term, the less evidence of procedural unconscionability is

5  required to come to the conclusion that the term is unenforceable, and vice versa."

6  *Sanchez*, 61 Cal. 4th at 910 (quoting *Armendariz v. Found. Health Psychcare Servs.,*

7  *Inc.*, 24 Cal. 4th 83, 114 (2000)).

8          **2.**      **Analysis**

9                  **a.**      **There Is Minimal Procedural Unconscionability**

10                        **i.**      **Legal Standard**

11      A procedural unconscionability analysis "begins with an inquiry into whether

12 the contract is one of adhesion."  *OTO, L.L.C.*, 8 Cal. 5th at 126 (quoting *Armendariz*,

13 24 Cal. 4th at 113).  An adhesive contract is standardized, generally on a preprinted

14 form, and offered by the party with superior bargaining power "on a take-it-or-leave-it-

15 basis."  *Id.* (quoting *Baltazar*, 62 Cal. 4th at 1246).  "Arbitration contracts imposed as a

16 condition of employment are typically adhesive," so "[t]he pertinent question, then, is

17 whether circumstances of the contract's formation created such oppression or surprise

18 that closer scrutiny of its overall fairness is required."  *Id.*

19      "The oppression that creates procedural unconscionability arises from an

20 inequality of bargaining power that results in no real negotiation and an absence of

21 meaningful choice."  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir.

22 2017) (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App.

23 4th 1332, 1347–48 (2015), *as modified on denial of reh'g* (Feb. 9, 2015)).  "The

24 circumstances relevant to establishing oppression include, but are not limited to[:]"

25          (1) the amount of time the party is given to consider the
         proposed contract; (2) the amount and type of pressure

26          exerted on the party to sign the proposed contract; (3) the
         length of the proposed contract and the length and

27          complexity of the challenged provision; (4) the education
         and experience of the party; and (5) whether the party's

28          review of the proposed contract was aided by an attorney.

1    *OTO, L.L.C.*, 8 Cal. 5th at 126–27 (quoting *Grand Prospect Partners*, 232 Cal. App. 4th

2    at 1348).

3           Procedural surprise focuses on whether the challenged term is hidden in a

4    prolix printed form or is otherwise beyond the reasonable expectation of the weaker

5    party.  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005)

6    (citations omitted).  *Accord Bielski*, 87 F.4th at 1013.  However, California courts have

7    recognized that "the adhesive nature of a contract, without more, would give rise to a

8    low degree of procedural unconscionability at most."  *Poublon*, 846 F.3d at 1261–62

9    (citing *Baltazar*, 62 Cal. 4th at 1245).  Thus, to find that there was procedural

10   unconscionability, the Court must find that there was "'surprise or other sharp

11   practices' [which] may arise when a party with less bargaining power is not told about

12   an unusual provision, or the party is otherwise 'lied to, placed under duress, or

13   otherwise manipulated into signing the arbitration agreement.'"  *Id.* at 1261 n.2

14   (quoting *Baltazar*, 62 Cal. 4th at 1245).

15                      **ii.    Analysis**

16                            **(A)    The Adhesive Nature of the Arbitration**
                                      **Agreement Creates Some Procedural**
17                                    **Unconscionability**

18          As an initial matter, there is no doubt that the arbitration agreement between

19   Plaintiff and Defendants was part of an adhesive contract provided "on a take-it-or-

20   leave-it-basis."  *OTO, L.L.C.*, 8 Cal. 5th at 126 (quoting *Baltazar*, 62 Cal. 4th at 1246).

21   Indeed, the Declaration of Lori Mullins admits that new hires were given a copy of the

22   arbitration agreement and were "required to review and execute each of the

23   documents linked in the portal[,]" including the arbitration agreement, before they

24   could work.  (Mullins Decl. (ECF No. 9-3 at 1–6) ¶ 14; *see also id.* ¶¶ 6–9.)  Thus, "the

25   adhesive nature of the contract is sufficient to establish some degree of procedural

26   unconscionability."  *Sanchez*, 61 Cal. 4th at 915.  However, "the adhesive nature of a

27   contract, without more, would give rise to a low degree of procedural

28   unconscionability at most[,]" so the Court "turn[s] to the question whether there are

1    other indications of oppression or surprise that would lead California courts to

2    conclude that the degree of procedural unconscionability is high." *Poublon*, 846 F.3d

3    at 1261–62 (citing *Baltazar*, 62 Cal. 4th at 1245).

4                           **(B)     There Was No Significant Oppression**

5         First, Plaintiff argues that there was a high level of oppression because he "was

6    unable to thoroughly review the Agreement and understand what he was consenting

7    to, particularly in light of his lack of education." (Opp'n at 11 (citing *Swain v.*

8    *LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 69 (2020), *as modified* (Nov. 3, 2020)).)

9    However, courts have found procedural unconscionability based on specific factors in

10   the employee's education or background, such as where the employee could not

11   speak English, not where they did not have a college degree. *See, e.g.*,

12   *Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal. App. 5th 201, 210–11 (2019)

13   (noting that the employee had limited English skills); *Carmona v. Lincoln Millennium*

14   *Car Wash, Inc.*, 226 Cal. App. 4th 74, 85 (2014) (noting that the employer knew that

15   the employees could not read English and did not provide a Spanish translation of the

16   enforceability clause despite making translations of other material). *Accord OTO,*

17   *L.L.C.*, 8 Cal. 5th at 128 and n.8.

18        Moreover, Plaintiff complains that he had little time to review and sign the

19   arbitration agreement, but he received more time than the plaintiff in *Swain*, the case

20   he cites. (*See* Opp'n at 10.)  In *Swain*, "Laseraway provided the agreement to Swain to

21   sign 'immediately' before she was 'taken to [a] room for her procedure,'

22   demonstrating that Laseraway gave Swain little time to review, and exerted pressure

23   on her to sign, the agreement." *Swain*, 57 Cal. App. 5th at 69.  Here, although Plaintiff

24   was told to sign the agreement "as soon as possible[,]" Plaintiff was not waiting on a

25   service and still had at least 24 hours to review the paperwork according to Plaintiff's

26   Opposition. (*See* Opp'n at 10 (citing Decl. of Pl. Robert Hicks in Supp. of Pl.'s Opp'n

27   (ECF No. 14-1 at 1–4) ¶ 12 ("Hicks Decl.")).)  Thus, Plaintiff received significantly more

28   time to review the arbitration agreement than the plaintiff in *Swain*, yet even in *Swain*

the court simply determined that "the arbitration agreement would still have at least a *minimal degree* of procedural unconscionability." *Id.* at 71 (emphasis added).

Indeed, Plaintiff admits that he was "emailed a job offer at Utiliquest" that "included a preview of forms [he] would be required to sign, including the Agreement." (Hicks Decl. ¶ 8.) Plaintiff admits that he reviewed the arbitration agreement on June 6, 2022, which was three days *before* he signed and reviewed the arbitration agreement being enforced against him now on June 9, 2022. (*Compare* ECF No. 14-1 at 6, 9, 13 (providing a copy of a contract Plaintiff electronically signed on 6/6/2022); ECF No. 9-3 at 18–19 (same) *with* ECF No. 9-3 at 26 (providing a copy of a contract Plaintiff electronically signed on 6/9/2022); ECF No. 14-2 at 7 (same).) As a result, Plaintiff's complaints regarding a lack of time to review the arbitration agreement ring hollow.

Second, Plaintiff argues that there was a high amount of procedural unconscionability because the arbitration agreement contained legal jargon and he did not understand the agreement until he retained counsel. (*See* Opp'n at 11.) However, that was not enough in *Sanchez* to add to the procedural unconscionability analysis where the employer even admitted during oral arguments that "[m]any people who are not legally trained do not understand the vast majority of what is in this contract[.]" *Sanchez*, 61 Cal. 4th at 914 (first alteration included; second alteration added).

Accordingly, Plaintiff has failed to establish that there was any additional oppression when formulating the arbitration agreement separate from the oppression inherent in an adhesive contract. *See Poublon*, 846 F.3d at 1261–62.

### (C)    There Was No Significant Surprise

Without oppression, Plaintiff is left with surprise but here too his arguments fail. (*See* Opp'n at 11–13.) First, Plaintiff argues that the arbitration agreement was a surprise to him because "it includes over 300 single spaced lines of legal jargon, incomprehensible to a layperson." (*Id.* at 11.) In reality, the arbitration agreement is a

1   three-page document with two columns of block text.  (*See* Mullins Decl. Ex. G, at 1–3.)

2   Arbitration agreements of the same or similar length and stylized with like features

3   such as columns and bolded headings have been approved before.  *See, e.g.*, *Davis v.*

4   *Kozak*, 53 Cal. App. 5th 897, 907 (2020) ("The agreement is set forth in a standalone

5   three-page document, clearly labeled 'Binding Arbitration Agreement,' with standard-

6   sized and readable text."); *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1003 (N.D.

7   Cal. 2022) ("The Koneru Contract is only four pages long with the arbitration clause on

8   the first page, and the Second Cohen and Vaccarella Contracts are eleven pages long

9   with the arbitration provision on page 4 under the bolded section heading 'Governing

10  Law.'").  Thus, the three-page arbitration agreement is not "visually impenetrable" and

11  does not "challenge[ ] the limits of legibility."  *OTO, L.L.C.*, 8 Cal. 5th at 128.

12      Second, Plaintiff argues that there was a high amount of surprise and

13  procedural unconscionability "because [the agreement] was one document of several

14  that Plaintiff had to sign to commence his work at Utiliquest."  (Opp'n at 12 (citing

15  *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 103 (2020)).)  However,

16  Plaintiff was not pressured into signing the agreement, unlike the plaintiff in

17  *Dougherty*.  In that case, the plaintiff was looking for long-term residential care for her

18  father who suffered from dementia (also known as a nursing home or a skilled nursing

19  facility).  The defendant's business "was 'the only feasible care option' for her father[,]"

20  such that "Dougherty was 'relieved' to have found a placement for her father[,]" and

21  "was 'crying' and 'emotionally exhausted' as she signed the admission forms."

22  *Dougherty*, 47 Cal. App. 5th at 97–98.  Moreover, although Plaintiff avers that he had

23  to read more than 90 pages of documents while on-boarding (*see* Hicks Decl. ¶ 11),

24  Plaintiff does not aver or allege that the agreement was hidden like a needle in a

25  haystack, unlike in *Dougherty* where the arbitration agreement was "buried within the

26  packet at pages 43 through 45 [of 90]."  *Dougherty*, 47 Cal. App. 5th at 104.  Rather,

27  the arbitration agreement "was not hidden, but prominently featured as part of the

28  employment application . . . ."  *Sanchez v. Carmax Auto Superstores California, LLC*,

1   224 Cal. App. 4th 398, 403 (2014) ("*Carmax*").  And as mentioned before, Plaintiff

2   previewed and signed the arbitration agreement on June 6, 2022, three days before

3   he signed the operative agreement being enforced against him in this case.

4        Finally, Plaintiff argues that there was a high degree of surprise because he was

5   forced to complete the on-boarding process online and Defendants never inquired

6   into whether Plaintiff "could view the documents electronically[ ] and did not provide

7   any alternative options for Plaintiff to sign the Agreement."  (Opp'n at 12.)  Here,

8   Plaintiff relies on *Hasty v. American Automobile Association*, 98 Cal. App. 5th 1041,

9   1057–58 (2023), *review denied* (May 1, 2024).  (*See* Opp'n at 12–13.)  Admittedly,

10  *Hasty* has some superficial similarities, but it is ultimately distinguishable.

11       For instance, Plaintiff, like Hasty, claims that he does not own a computer or

12  printer.  *Compare* (Hicks Decl. ¶ 7) *with Hasty*, 98 Cal. App. 5th at 1057.  And

13  Defendants, like the defendants in *Hasty*, allegedly did not "inquire[ ] into whether

14  [Plaintiff] had the ability to view the documents electronically and did not appear to

15  provide any other alternative, such as to view the documents at an office on a

16  computer or to pick up the physical documents for review before signature."  *Hasty*,

17  98 Cal. App 5th at 1057. (*See* Opp'n at 12–13.)  However, here Plaintiff had already

18  applied online to an internet job posting for the position through the website Indeed.

19  Given his use of the internet to apply for the position, it would have been clear to

20  Defendants that Plaintiff had access to a computer and the internet, that he could view

21  the documents electronically, and that he had sufficient skill to complete a job

22  application online.  (*See* Hicks Decl. ¶ 5.)  Thus, Plaintiff's first complaint about

23  Defendants never inquiring into whether he could view the documents electronically

24  fails because there was no need to considering that Plaintiff reached out to

25  Defendants through electronic means.  (*See* Opp'n at 12.)

26       Similarly, Plaintiff complains that Defendants never offered any other options

27  for Plaintiff to view and sign the arbitration agreement (*see* Opp'n at 12), but Plaintiff

28  admits that he previewed and signed the arbitration agreement on June 6, 2022

14

before he signed the operative agreement on June 9, 2022 (*see* Hicks Decl. ¶¶ 8–12). Thus, there was no need to provide an alternative method when Plaintiff already had a chance to preview the contract and did review the arbitration agreement before he signed it (again) on June 9, 2022.

As a result, Plaintiff "has not established any other element of oppression or surprise associated with the [arbitration] agreement[.]" *Poublon*, 846 F.3d at 1263. "[T]herefore under California law, 'the degree of procedural unconscionability of [such] an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Id.* (quoting *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013), *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013)).

### b.    There Are No Substantively Unconscionable Terms

### i.    Legal Standard

Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. *OTO, L.L.C.*, 8 Cal. 5th at 125 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)). This analysis "ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as 'overly harsh[,]' 'unduly oppressive[,]' 'so one-sided as to "shock the conscience[,]"' or 'unfairly one-sided[.]'" *Id.* at 129–30 (citations and some internal quotation marks omitted). Unconscionable terms "'impair the integrity of the bargaining process or otherwise contravene the public interest or public policy'" or attempt to impermissibly alter fundamental legal duties. *Id.* at 130 (quoting *Sonic II*, 57 Cal. 4th at 1145). This may include, as "illustrative, not exhaustive[,]" examples, "fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations." *Id.* However, "[s]ubstantive terms that, in the abstract, might not

1  support an unconscionability finding take on greater weight when imposed by a

2  procedure that is demonstrably oppressive."  *Id.*

3            **ii.**      **Analysis**

4         Plaintiff has only two challenges regarding the substantive unconscionability of

5  the arbitration agreement, arguing that it does not provide sufficient discovery and

6  that the arbitration agreement lacks mutuality.  (*See* Opp'n at 14–19.)  The Court

7  disagrees.

8            **(A)**      **The Discovery Limitation Is Not**

9                        **Substantively Unconscionable**

10         Plaintiff argues that the arbitration agreement is unconscionable because "[t]he

11  default discovery provisions . . . only allow for the deposition of 'two individual fact

12  witnesses and any expert designated by another party,' and only permit the parties to

13  propound requests for documents, not requests for interrogatories or admissions."

14  (Opp'n at 17 (citing Mullins Decl. ¶ 22; Mullins Decl. Ex. G, at 3).)  Here, Plaintiff largely

15  relies on *Fitz v. NCR Corporation*, 118 Cal. App. 4th 702 (2004) to argue that these

16  initial limitations are too restrictive when combined with the fact that "[t]he Agreement

17  further restricts additional discovery by requiring a stipulation by both parties for

18  more[,]" and by giving the arbitrator the "exclusive authority to grant or deny such

19  requests, based on the arbitrator's determination whether additional discovery is

20  warranted by the circumstances of a particular case[.]"  (*Id.* (first citing Mulls Decl. Ex.

21  G, at 3; and then quoting Mullins Decl. Ex. G, at 3).)

22         In *Fitz*, the agreement "limit[ed] discovery to the sworn deposition statements

23  of two individuals and any expert witnesses expected to testify at the arbitration

24  hearing[,]" and it "require[d] all exhibits and a list of potential witnesses to be

25  exchanged at least two weeks in advance of the arbitration hearing."  *Fitz*, 118 Cal.

26  App. 4th at 716.  However, no other discovery was allowed unless the arbitrator found

27  a compelling need to allow it, which, as specified in the arbitration agreement,

28  required that it would be impossible to conduct a fair hearing without the additional

discovery.  *See id.*  The plaintiff in *Fitz* argued that these limitations were too restrictive for her to vindicate her rights in arbitration because she needed to depose an estimated 8 to 10 witnesses and needed to get the arbitrator's approval to access any written information.  *See id.* at 717.  The court agreed, noting that the agreement chose to limit the incorporated rules to the defendant's advantage.  *See id.* at 718.

Here, as an initial matter, Plaintiff fails to argue that the arbitration agreement provides him insufficient discovery, which is sufficient to deny finding that the discovery limitation is substantively unconscionable.  *See Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 183 (2002) ("[W]ithout evidence showing how these provisions are applied in practice, we are not prepared to say they would necessarily prevent [the plaintiff] from vindicating his statutory rights.'"); *Poublon*, 846 F.3d at 1266 ("Finally, Poublon fails to make any showing that she would be unable to vindicate her rights under the standard provided in the agreement."  (citing *Carmax*, 224 Cal. App. 4th at 405–06)).  *Accord Davis*, 53 Cal. App. 5th at 912 ("*Mercuro* and *Poublon* emphasized that the plaintiffs before them had made no showing whatsoever of an inability to vindicate their statutory rights under the discovery standards provided in the subject arbitration agreements.").

Even when evaluating the substance of the limitation, however, Plaintiff can obtain more discovery here than in other cases.  As in *Poublon*, "the discovery limitations and evidence presented are more similar to those in [*Carmax*] than those in *Fitz*."  *Poublon*, 846 F.3d at 1271.  Plaintiff has a lower standard to obtain discovery than in *Fitz*, which required that the discovery request be denied unless "*a fair hearing is impossible without additional discovery*."  *Fitz*, 118 Cal. App. 4th at 709.  Here, by contrast, Defendants concede that if they and Plaintiff are unable to stipulate to more discovery, "then the arbitrator can grant more if it is 'warranted by the circumstances of the particular case.'"  (Reply at 13 (quoting Mullins Decl. Ex. G, at 3).)  This standard appears to be more akin to the "showing of need" standard upheld in *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 978, 983–84 (2010), and that discovery limitation

1  appeared more onerous than here where each party only had "the right to take the

2  deposition of one individual and any expert witness designated by the other party[,]"

3  and similarly had "the right to make requests for production of documents to any

4  party." This "warranted by the circumstances" standard appears even less

5  burdensome than the "substantial need" standard upheld in *Carmax* and is at least as

6  liberal as the "good cause" standard upheld in *Poublon*. *See Poublon*, 846 F.3d at

7  1271 ("The California Court of Appeal rejected this argument, noting that in the

8  dispute resolution provision at issue in its case, the discovery provisions were

9  "considerably more liberal" than they were in *Fitz*, and the employee could get

10  additional discovery merely by showing substantial need, rather than compelling

11  need as in *Fitz*." (citing *Carmax*, 224 Cal. App. 4th at 405)).

12         Plaintiff counters, arguing that "granting the arbitrator discretion to expand

13  discovery based on the arbitrator's assessment of the 'circumstances of the case'

14  places a higher burden than 'simple showing of need' and is sufficiently vague as to

15  diminish the arbitrator's authority to increase discovery." (Opp'n at 19 (citing *Baxter v.*

16  *Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 928–29 (2017)).) However, "Baxter set

17  forth facts tending to show that the default levels of discovery would be inadequate to

18  vindicate her statutory rights." 16 Cal. App. 5th at 729 (distinguishing *Carmax,* 224

19  Cal. App. 4th 404-05; *Mercuro*, 96 Cal. App. 4th at 183). Moreover, unlike in *Baxter*,

20  here there is only one standard based on the circumstances of the case, not two

21  standards – that the requested discovery be needed for both good cause and

22  sufficient cause. *Compare with Baxter*, 16 Cal. App. 5th at 729 ("In applying the

23  Resolve guidelines and assessing whether a "sufficient" showing has been made to

24  justify additional discovery, an arbitrator might expect a showing beyond simple

25  "good cause," particularly if the employee seeks discovery well beyond the default

26  limitations.").

27         Granted, Plaintiff does not have the advantage of substantial initial disclosures

28  and obligations to supplement those initial disclosures. *Compare with Carmax*, 224

1    Cal. App. 4th at 404; *CarMax Auto Superstores California LLC v. Hernandez*, 94 F.

2    Supp. 3d 1078, 1123–24 (C.D. Cal. 2015) (collecting cases).  However, Defendants

3    concede that "parties can avail themselves of *unlimited* subpoenas to third parties to

4    produce documents and/or testify at deposition or at the hearing." (Reply at 12 (citing

5    Mullins Decl. Ex. G, at 3).)  Indeed, each party "may also propound requests [for]

6    production of documents . . . ." (Mullins Decl. Ex. G, at 3.)  Thus, Plaintiff has the ability

7    to obtain all relevant documents, which was crucial in other cases where a discovery

8    limitation was held substantively unconscionable.  *See, e.g.*, *De Leon v. Pinnacle Prop.*

9    *Mgmt. Servs., LLC*, 72 Cal. App. 5th 476, 487–89 (2021) (complaining that "the

10   [agreement] does not provide for any similar document discovery").

11          As a result, because Plaintiff has failed to argue that the discovery limitations in

12   this case prevent him from vindicating his rights during arbitration and because

13   Plaintiff can obtain more discovery than in other cases, the Court concludes that the

14   discovery limitation clause is not substantively unconscionable.

15                          **(B)    The Agreement Is Mutual and Bilateral**

16          Plaintiff also argues that the arbitration agreement is substantively

17   unconscionable for a lack of mutuality because Plaintiff must arbitrate all his claims

18   while Defendants may seek injunctive relief in courts for breaches of the separate

19   confidentiality agreement that Plaintiff signed while on-boarding on his first day of

20   work.  (*See* Opp'n at 14–17 (relying on *Alberto v. Cambrian Homecare*, 91 Cal. App.

21   5th 482, 491–92 (2023)); *also* Tosdal Decl. Ex. B (ECF No. 14-2 at 8–10) (providing a

22   copy of the signed confidentiality agreement).)  However, as recognized in *Alberto*,

23   "provisions that allow employers to seek a preliminary injunction outside of arbitration

24   for breach of a confidentiality agreement are not, by themselves, unconscionable,

25   simply because they primarily benefit employers." *Alberto*, 91 Cal. App. 5th at 492

26   (citing *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 450 (2020); *Carbajal v.*

27   *CWPSC, Inc.*, 245 Cal. App. 4th 227, 250 (2016)).  But additional provisions that waive

28   the employer's need to obtain a bond before seeking an injunction, waive the

1   employer's need to obtain a bond before seeking an injunction, waive the employer's

2   need to show irreparable harm, and require an employee to consent to an immediate

3   injunction *are* unconscionable.  *Id.*  They exceed the legitimate "margin of safety" for

4   the employer and are not mutual.  *Id.* (citing *Lange*, 46 Cal. App. 5th at 451; *Carbajal*,

5   245 Cal. App. 4th at 250).  But unlike in *Alberto*, *none* of those provisions are present

6   here.  *Compare with id.* at 493 ("Each of those provisions was present here . . . .").  (*See*

7   Reply at 10 n.3.[2])

8          Accordingly, because the Court concludes that there are no substantively

9   unconscionable terms, Plaintiff fails to establish that both elements of procedural and

10  substantive unconscionability are present to establish that the arbitration agreement is

11  unconscionable overall.  *See OTO, L.L.C.*, 8 Cal. 5th at 125 (quoting *Armendariz*, 24

12  Cal. 4th at 114).

13         **C.     The Class Action Claims Are Waived and Dismissed**

14         As Defendants note, the arbitration agreement "contains a waiver of the right to

15  bring or participate in a class action suit or class arbitration."  (Mot. at 6 (citing Mullins

16  Decl. Ex. G, at 3).)  And as Defendants also note, "[u]nder Supreme Court and Ninth

17  Circuit precedent, such clauses must be enforced."  (*Id.* (citing *Epic Sys. Corp. v. Lewis*,

18  584 U.S. 497, 524–25 (2018); *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1013

19  (9th Cir. 2023); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)).)

20  Thus, because Plaintiff assented to the arbitration agreement, which is valid, the Court

21  must also enforce the valid class or collective action waiver, and, therefore, dismiss the

22  class action claims from the Complaint.  *See, e.g.*, *Prostek v. Lincare Inc.*, 662 F. Supp.

23  3d 1100, 1122 (E.D. Cal. 2023) (collecting cases).

24  ////

25

26  _____

    [2] Contrary to Defendants' contention, the arbitration agreement *does* state that both parties "may apply
27  to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an
    arbitrable controversy, including without limitation any controversy under any applicable restrictive
    covenant(s) or *confidentiality obligations* between [Plaintiff] and [Defendants]."  (Mullins Decl. Ex. G, at 2
28  (emphasis added).)  (*See* Reply at 10–11.)

**D.    The Individual PAGA Action Must Be Arbitrated**

The arbitration agreement also contained a requirement that any individual PAGA claims be arbitrated.  (*See* Mullins Decl. Ex. G, at 2 (stating that the agreement does not cover "representative actions for civil penalties filed under [PAGA] (but to the extent permitted by applicable law, any claim by You on Your own behalf under PAGA to recover Your unpaid wages must be arbitrated and is covered by this Agreement.").)  Both the United States and California Supreme Courts have recognized that individual PAGA claims may be arbitrated even though waivers of representative PAGA claims are unenforceable.  *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 ("Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."), *reh'g denied*, 143 S. Ct. 60 (2022), *not followed on state law grounds by Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).  Thus, the Court concludes that Plaintiff's individual PAGA claim must be arbitrated.

**E.    The Representative PAGA Claim Is Stayed**

Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing to sue as an aggrieved employee to litigate claims on behalf of other employees under PAGA.  *Adolph*, 14 Cal. 5th at 1114.  As a result, the Court must decide how to handle the remaining representative PAGA claim. Defendants ask that the representative claim be stayed but Plaintiff asks that the claim proceed.  (*Compare* Opp'n at 21–22 *with* Mot. at 10; Reply at 14–15.)

However, as Defendants note, both California and federal arbitration law require that any remaining claims be stayed pending completion of arbitration of the other claims.  (*See* Reply at 15 (citing 9 U.S.C. § 3 (requiring the court, "on application of one of the parties [to] stay trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); Cal. Code Civ. Proc. § 1281.4 (requiring the court "upon motion of a party to such action or proceeding, [to] stay the

1   action or proceeding until an arbitration is had in accordance with the order to

2   arbitrate or until such earlier time as the court specifies.")).)  Plaintiff does not dispute

3   this, but, instead, argues that the Court has discretion to stay, which means discretion

4   to permit the case to proceed.  (*See* Opp'n at 21.)  Here, Plaintiff mostly relies on

5   *Jarboe v. Hanlees Auto Group*, 53 Cal. App. 5th 539, 557 (2020) to argue that

6   "[b]ecause a PAGA claim is representative and does not belong to an employee

7   individually, an employer should not be able to dictate how and where the

8   representative action proceeds."  (Opp'n at 21 (quoting *Jarboe*, 53 Cal. App. 5th at

9   557).)  But *Jarboe* was decided before *Adolph*, which held that staying rather than

10   dismissing was the way to proceed, and in no instance was permitting the

11   representative claim to proceed on its own contemplated.  *See Adolph*, 14 Cal. 5th at

12   1124.  And as other courts have subsequently recognized, *Jarboe* had the issue of

13   individual PAGA claims brought against non-signatories to the arbitration agreement

14   that were not compelled to arbitration, so those PAGA claims could not be stayed,

15   "and since the PAGA claim against the signatory and non-signatory defendants was

16   not severable, the PAGA claim could not be stayed."  *Elvira v. So Cal Elite Traffic, Inc.*,

17   No. CIVDS1935613, 2021 WL 9218377, at *4 (Cal. Super. Apr. 16, 2021).  Here, "this

18   problem does not exist."  *Id.*  "Accordingly, a stay of this [C]ourt's proceedings on

19   Plaintiff's PAGA claims is appropriate."  *Id.  See, e.g.*, *Josephson v. Lamon Construction

20   Co., Inc.*, No. 2:23-cv-000043-DAD-AC, 2024 WL 382378, at *4 (E.D. Cal. Jan. 31,

21   2024) (collecting cases where courts stayed the representative claims from

22   proceeding).  *But see Johnson v. Lowe's Home Centers, LLC*, 93 F.4th 459, 465–68 (9th

23   Cir. 2024) (Lee, J., concurring) (expressing concern that current splitting of

24   representative and individual claim may increase pressure on outcome for arbitration

25   of low-value individual claim because of preclusive effect for the representative claim

26   in federal court down the road, which may lead to "potential conflict [between

27   California law and the FAA] in future cases.").

28   *////*

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' Motion to Compel Arbitration (ECF No. 9).  As a result, the Court: (1) compels arbitration of Plaintiff's claims on an individual basis; (2) compels arbitration of Plaintiff's individual PAGA claim; (3) dismisses without prejudice Plaintiff's class action claims; and (4) stays litigation of Plaintiff's representative PAGA claim.  The parties are instructed to file a joint status report with the Court every six months informing the Court of the status of arbitrating Plaintiff's claims, and the parties are to immediately notify the Court once arbitration of Plaintiff's claims has been completed.

IT IS SO ORDERED.

Dated:   **June 10, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Hicks.24cv911.MTC.Arbitration

23